**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3908
_____

SHEILA A. WOOD,
                              Appellant

v.

BRIAN WILLIAMS, Individually and in his capacity as executive director of the Bethlehem
Area Vocational-Technical School; DR. IRENE GAVIN, Individually and in her capacity as
Supervisor of Instruction-Principal of the Bethlehem Area Vocational-Technical School;
SANDRA KLEIN, Individually and in her capacity as Supervisor of Lifelong Learning-
Technology of the Bethlehem Area Vocational-Technical School; JOHN HANEY, Individually
and in his capacity as Technology Coordinator of the Bethlehem Area Vocational-Technical
School; SHARON STACK, Individually and in her capacity as Chairperson of the Joint
Operating Committee of the Bethlehem Area Vocational-Technical School; BETHLEHEM
AREA VOCATIONAL TECHNICAL SCHOOL; BETHLEHEM AREA VOCATIONAL
TECHNICAL SCHOOL AUTHORITY; BETHLEHEM AREA SCHOOL DISTRICT;
NORTHAMPTON AREA SCHOOL DISTRICT; SAUCON VALLEY SCHOOL DISTRICT;
JOHN JANE DOES 1-X
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 5:12-cv-04624)
District Judge: Hon. Stewart Dalzell
_____

Submitted Under Third Circuit LAR 34.1(a)
March 28, 2014
_____

Before: FUENTES and SHWARTZ, *Circuit Judges*, and ROSENTHAL, *District Judge.*[*]

_____

[*] The Honorable Lee H. Rosenthal, United States District Judge for the Southern
District of Texas, sitting by designation.

_____

OPINION

_____

ROSENTHAL, *District Judge*.


Plaintiff-Appellant Sheila A. Wood sued her former employer, the Bethlehem Area Vocational-Technical School ("BAVTS"), alleging that her work conditions were changed and that she was suspended without pay, then fired, in retaliation for speaking out on a matter of public concern. Wood asserted claims under 42 U.S.C. § 1983 for First and Fourteenth Amendment violations and under state tort law for wrongful termination and related wrongs. Wood also sued the three school districts that the BAVTS served and the Joint Operating Committee that managed the BAVTS, as well as the BAVTS executive director, the chair of the BAVTS Joint Operating Committee, and other BAVTS employees. The United States District Court for the Eastern District of Pennsylvania dismissed Wood's complaint in part, with prejudice, retaining some of the claims against two of the individual defendants. The parties stipulated to dismiss the remaining claims to permit immediate appeal. Wood appeals only the dismissal of the *Monell* claim against the BAVTS, the dismissal of the supervisory-liability claim against three of the individual defendants, and the dismissal of the § 1983 conspiracy claim against all individual defendants. We find no basis for reversal and will affirm.

I.

2

The BAVTS is a public educational institution serving students in the Bethlehem, Northampton, and Saucon Valley School Districts. In October 2006, the BAVTS hired Wood as a technology assistant. Wood alleged in her complaint that in 2010, she became concerned with asbestos exposure on the BAVTS campus and in a BAVTS project home. She alleged that the asbestos exposure was a matter of public concern that attracted local news-media attention.

According to Wood, the Joint Operating Committee that managed the BAVTS's day-to-day operations was responsible for "protecting the legal and Constitutional rights of individuals, including employees of BAVTS, within their respective legal jurisdictions, including . . . providing pre-employment screening, training, and supervision in a manner which is not deliberately indifferent to those said rights." Compl. ¶¶ 8, 16. The BAVTS Joint Operating Committee held open meetings at which members of the public could speak about various issues. Wood spoke at these meetings about asbestos exposure at the BAVTS campus and in the project home. Wood also talked to the BAVTS staff and others to "effectuate a response to the concerns raised by the asbestos exposure." *Id.* ¶¶ 24, 26.

Wood alleged that after she spoke out at "numerous" Joint Operating Committee meetings, the BAVTS initiated disciplinary action against her, the first she had received in her employment there. She was suspended without pay from February 17 to March 2, 2010. Wood alleged that when she returned to work after the suspension, her job duties were significantly altered: her access to equipment was restricted; she was assigned

3

inferior equipment; and she was denied access to a master key that she needed to do her job. Wood believed that she was being "set up to fail." *Id.*

In June 2010, Wood received an unsatisfactory performance evaluation. In July 2010, the BAVTS sent Wood notice of a *Loudermill* hearing. According to Wood, the *Loudermill* hearing was a sham. She alleged that she did not get documents supporting the charges against her; the BAVTS administrators involved in the hearing, Brian Williams, the BAVTS Executive Director, and Sandra Klein, the "Supervisor of Lifelong Learning–Technology," could not articulate a "single instance" of her misconduct; and she did not get fair notice of the reasons for her suspension. *Id.*

On August 16, 2010, Wood was again suspended without pay. Her employment was terminated on November 4, 2010, after the BAVTS Joint Operating Committee met. The Committee informed Wood that it acted because she had violated the BAVTS internet-use policy and her job performance was poor. Wood alleged that these reasons were pretextual and that she was disciplined, then fired, because she had raised concerns about asbestos on the BAVTS property. She alleged that the actions against her were in retaliation for her constitutionally protected speech. Wood alleged that the actions were approved by "the Defendant's high level officials and were carried out pursuant to custom and policy established with the Defendant's internal rules," *id.* ¶ 40, and that the individual defendants acted "pursuant to official policy or custom of one or more of the Institutional Defendants and with actual and or apparent authority of the said Defendants,

4

in an overt and direct attempt to punish [Wood] for exercising her Constitutional rights," *id.* ¶ 41.

Wood's complaint asserted five counts under § 1983: that all defendants violated her First and Fourteenth Amendment rights; that the individual defendants failed to intervene; supervisory liability as to four of the named individual defendants and the "Doe" defendants; *Monell* liability as to the institutional defendants; and that the individual defendants conspired to violate her rights. The remaining three counts asserted state-law claims for wrongful termination against the institutional defendants; intentional infliction of emotional distress against all defendants; and conspiracy against all the defendants.

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The District Court granted the motion in part, with prejudice, and denied it in part. The parties stipulated to the District Court dismissing the remaining claims so that Wood could appeal the dismissal of the *Monell* claim against the BAVTS; the dismissal of the supervisory-liability claim against three of the individual defendants; and the dismissal of the conspiracy claim against all defendants. We address these claims.

II.

We have jurisdiction under 28 U.S.C. § 1291, and we exercise plenary review over dismissals for failure to state a claim. *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

5

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

III.

Although Wood asserted a *Monell* claim against all five institutional defendants, she "does not appeal the dismissal of the School Districts which comprise the BAVTS, nor the dismissal of the BAVTS Authority." Blue Br. at 6. Wood appeals only the District Court's dismissal of the *Monell* claim against the BAVTS.

Wood alleged that the BAVTS "developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of BAVTS employees, which caused the violation of" Wood's constitutional rights. Compl. ¶ 61. She alleged that the BAVTS had a "policy and/or custom . . . to inadequately screen during the hiring process and to inadequately train, retrain and/or supervise BAVTS employees . . . thereby failing to adequately discourage Constitutional violations on the part of BAVTS employees." *Id.* ¶ 62. Wood also alleged that the BAVTS "did not require or demand appropriate in-service training of BAVTS employees, who were known to encourage or tolerate Constitutional violations" and failed to adopt policies to prevent its supervisory employees from violating the constitutional rights of those they supervised. *Id.* ¶¶ 63–64. "As a result of the above described policies and customs and/or failure to adopt necessary and appropriate policies, some BAVTS employees . . . believed that their actions would not be properly monitored by supervisory officials, and the Constitutional violations of the rights of individuals such as . . . Wood would not be investigated or sanctioned, but,

6

rather, would be tolerated." *Id.* ¶ 65. "The above described policies and customs, and the failure to adopt necessary and appropriate policies, demonstrated a deliberate indifference on the part of the policymakers . . . and were the cause of the violation of [Wood's] rights as alleged herein." *Id.* ¶ 66.

The BAVTS moved to dismiss the *Monell* claim on the basis that Wood had not "alleged that any state actor took any action pursuant to policy, practice, or custom to deny Wood a constitutional right. . . . [T]here [was] no allegation that any specific policy-maker took action to deprive Wood of any right." App. 98. The BAVTS noted that although Wood alleged that "high level officials" approved the actions against her and that they "were carried out pursuant to custom and policy," she had failed to allege any facts showing that "any relevant policy-maker was implementing an official policy or practice." App. 100.

In response, citing cases decided before *Twombly* and *Iqbal*, Wood argued that she could plead a *Monell* claim without alleging any facts showing what the official policy or custom was or identifying the policymaker or decisionmaker. She argued that it was enough for her "to demonstrate circumstances from which a reasonable person could impute constructive knowledge" of unconstitutional actions to a policymaker or decisionmaker. She also argued that discovery was "necessary to determine the policymaking status of the individuals involved in the Constitutional violations." App. 206.

7

The District Court dismissed Wood's *Monell* claim because her complaint failed to identify any unlawful policy or custom and failed to identify any policymaker or decisionmaker responsible for the unlawful conduct alleged. Instead, the complaint made conclusory and general claims of failure to screen, train, or supervise employees to avoid constitutional violations. *See Wood v. Bethlehem Area Vocational Technical Sch.*, No. 12-cv-4624, 2013 WL 2983672, at *9–10 (E.D. Pa. June 17, 2013) (citing *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). The District Court was correct in finding that Wood's complaint allegations stated the elements of the cause of action and were insufficient. *Id.* "[S]imply paraphras[ing] § 1983" does not meet Rule 8's pleading requirements because it fails to satisfy the "rigorous standards of culpability and causation" required to state a claim for municipal liability. *McTernan*, 564 F.3d at 658–59 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 405 (1997)); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010).

Wood argues on appeal that the District Court's dismissal of the *Monell* claim against the BAVTS "overlooks the crucial fact that the [unlawful] decision of" Williams and Klein "was ratified by the governing body of BAVTS, known as the 'Joint Operating Committee.'" Blue Br. at 14. Sharon Stack signed the decision to fire Wood on the Joint Operating Committee's behalf. Wood argues that the "lower court [was] simply incorrect" in dismissing the *Monell* claim because by alleging ratification by the BAVTS Joint Operating Committee, she adequately alleged both what the unconstitutional custom consisted of and who the decisionmakers were. Blue Br. at 14–15. But the complaint

8

Wood filed in the District Court did not allege a ratification theory of *Monell* liability, and the briefs she filed with the District Court did not present this ratification argument.

Wood's complaint alleged that the BAVTS violated her First and Fourteenth Amendment rights because it had a custom of failing to screen when it hired employees and of failing to train and supervise them to avoid violating the constitutional rights of those they supervised. The complaint did not allege any of the elements necessary to plead a valid failure-to-screen claim, including a link between the failure to screen at hiring and the constitutional injury alleged. *See Bryan Cnty.*, 520 U.S. at 410–11 ("To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must [be able to] carefully test the link between the policymaker's inadequate decision and the particular injury alleged. . . . [The plaintiff must demonstrate that] scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right.").

The complaint was also deficient in alleging a claim for failure to train or supervise. The complaint did not allege facts showing any particular or specific policy or custom, or how it allowed the claimed constitutional violation to occur, identifying the policymaker or decisionmaker, or showing prior notice through a pattern of similar constitutional violations. *See, e.g.*, *McTernan*, 564 F.3d at 658; *see also Thomas v. Cumberland Cnty.*, — F.3d —, —, 2014 WL 1395666, at *7 (3d Cir. Apr. 11, 2014) ("Liability cannot rest only on a showing that the employees could have been better

9

trained or that additional training was available that would have reduced the overall risk of constitutional injury. [T]he causation inquiry focuses on whether the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." (quotations omitted)).

Failure to train can be the basis of *Monell* liability when the municipality's "failure to train reflects deliberate indifference to constitutional rights." *City of Canton v. Harris*, 489 U.S. 378, 388, 392 (1989); *see Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001) (holding that a failure-to-train claim must reflect a deliberate or conscious choice by a municipality as defined in Supreme Court cases); *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) ("[I]n order for a municipality's failure to train or supervise to amount to deliberate indifference, it must be shown that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." (citations and footnote omitted)).

In addition, the complaint did not allege any facts that could support an inference that the BAVTS was on notice of the risk of retaliation for First Amendment protected speech by employees, and that it was deliberately indifferent to this risk. While the complaint briefly mentioned one of Wood's coworkers, a man named Crosby, as one who spoke out at a meeting and was later suspended, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of

10

the incident includes proof that it was caused by an existing, unconstitutional [government] policy, which policy can be attributed to a . . . policymaker." *City of Okla. City v.Tuttle*, 471 U.S. 808, 823–24 (1985).

When the defendants pointed to the complaint's deficiencies in the motion to dismiss, Wood did not respond with the ratification theory of liability that she asserts here. Instead, Wood argued to the District Court that she needed discovery to determine the policymaking status of those who had committed the constitutional violations. She stated that discovery was "necessary to determine the policymaking status of the individuals involved in the Constitutional violations." App. 206. But Wood did not explain why her own knowledge about the BAVTS from her years of working there did not allow her to plead with more factual specificity.

Wood had not alleged in the complaint, and she did not argue in her brief opposing the motion to dismiss, that the BAVTS was liable under § 1983 because the Joint Operating Committee ratified the unconstitutional behavior of subordinate BAVTS employees. The District Court did not "simply overlook[]" these arguments; they were not presented. "We generally refuse to consider issues that are raised for the first time on appeal." *Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir. 1976).

Finally, even if the complaint had alleged a ratification basis for *Monell* liability consistent with the argument Wood raises for the first time on appeal, the allegations would have been deficient. Wood's ratification theory might fill in one of the pleading deficiencies the District Court identified, the failure to identify a policymaker or

11

decisionmaker. Wood's ratification theory does not fill in the second deficiency, the failure to plead any facts showing what the unlawful policy or custom was. *McTernan*, 564 F.3d at 658. And even assuming that the Joint Committee was the relevant decisionmaker, Wood's complaint still does not allege facts required to plead *Monell* liability for failing to hire, train, or screen.

We will affirm the dismissal of the *Monell* claim against the BAVTS.

IV.

The District Court dismissed the supervisory-liability claims asserted against the individual defendants and dismissed the other claims against these defendants except Williams and Klein. *Wood*, 2013 WL 2983672, at *11. Wood argues that the District Court erred in dismissing the supervisory-liability claims against Williams, Klein, and Dr. Irene Gavin. Wood, however, presents an argument only as to Williams and Klein.

Wood's complaint alleged that "[o]ne or more of the Defendants acted in a supervisory capacity under circumstances, and at a time, when one or more of the subordinate Defendants violated the Plaintiff's rights as set forth herein." Compl. ¶ 57. "In that regard, the Supervisory Defendants, now known and unknown, either directed the conduct which resulted in the violation of the Plaintiffs' federal rights as alleged; or, had actual knowledge of the subordinates violation of Plaintiffs' rights and acquiesced in said violations; or, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused the violation or, had a policy of maintaining no policy, where one or more policies or regulations were clearly

12

needed." *Id.* The District Court noted that the body of the complaint mentioned only two of the individual defendants by name—Brian Williams, the Executive Director of BAVTS, and Sandra Klein, "Supervisor of Lifelong Learning – Technology." *Wood*, 2013 WL 2983672, at *2. Wood alleged that "none of the administrators present including [Klein and Williams] could articulate one single instance of misconduct" at her *Loudermill* hearing. Compl. ¶ 32. The District Court denied the motion to dismiss these claims against Williams and Klein but granted the motion to dismiss the supervisory-liability claims against them and granted the motion to dismiss all claims as to the other individual defendants. The court explained:

> [i]f, as the complaint alleges, the hearing was insufficient to protect Wood's due process rights, and if it was used as a vehicle for her firing in retaliation for protected First Amendment activity, then Klein and Williams would have participated in a deprivation of Wood's constitutional rights.

*Wood*, 2013 WL 2983672, at *6. In dismissing the claims against Sharon Stack, chair of the Joint Operating Committee, the District Court noted that the complaint failed "to allege any facts whatsoever with respect to" this defendant. *Id.*

We will affirm for the reasons stated by the District Court. The complaint contained no specific factual allegations fleshing out the claims of supervisory liability. *Id.* at *11. By contrast, the complaint specifically alleged that Williams and Klein were involved in providing a deficient *Loudermill* hearing, and the District Court retained these claims.

Citing excerpts from the termination hearing, not the complaint, Wood argues on appeal that Williams and Klein had supervisory authority over her at the BAVTS and

13

were personally involved in deciding to terminate her employment. These allegations were not in the complaint before the District Court. Given the complaint allegations and the arguments Wood made to the District Court, it was not inconsistent for that court to dismiss the supervisory liability claims against Williams and Klein for factually insufficient pleading and to deny the motion to dismiss against them for individually violating her constitutional rights by providing a deficient *Loudermill* hearing.

Finally, we will affirm the dismissal of the § 1983 conspiracy claims for the reasons the District Court stated. *Id.* The complaint contained no specific factual allegations of "combination, agreement, or understanding among all or between any of the defendants to plot, plan or conspire to carry out the challenged conduct." *Id.* (citing *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992)).

## V.

Wood's arguments on appeal show no basis for reversal. The District Court's judgment will be affirmed.